# THURNEYSSEN v. VOUTHIER FILS.

March 7, 1835.

*Rule to show cause why the domestic attachment should not be quashed.*

Domestic attachment does not lie against a stranger in disguise, flying from his domicil in a foreign country, to avoid foreign creditors, temporarily concealing himself in a house in this state, taken for that purpose, and not with a view to a permanent residence, and having contracted no debts here that he could, by absconding, defeat.

ON the 5th of November 1834, the defendant arrived in Philadelphia from New York, with his wife, and M. and Madame Carriere, her parents, and baggage. The defendant was an entire stranger. After applying at several hotels for lodgings, without success, his baggage and family were left at a boarding house, while the defendant having hired a horse and gig, proceeded with a boy through the city in search of a house, and to attend with M. Carriere to the landing of some goods at a wharf. Having found an empty house, he proceeded to the residence of Mrs Dougherty, the owner, on the same day of his arrival, and applied to her, *to rent him the house until May.* He said he was from England, where he had resided for twelve years; that he was a Frenchman—he spoke English remarkably well; he said he had no acquaintances here, and therefore could not give any security for the rent, but he would pay it in advance; that his name was Leman; that his family consisted of his father, whom he called M. Carriere, his mother and his wife. Mrs Dougherty agreed to let him have the house for *six months.* The rent was paid. The defendant the next day was found by the owner in the house, but did not use his real name.

　A writ of *foreign attachment* was issued against the defendant at the suit of the plaintiffs in this action, demanding bail in the sum of 86,000 dollars, and three other writs against the defendant by diffe-

　　(*a*)　See Andrews v. Lee, 3 *Penns. Rep.* 99 (published in 1834).

[Thurneyssen v. Vouthier.]

rent names or additions were soon after issued, demanding in each case, bail in 87,000 dollars for the same debt. On the 19th of November all were levied.

The defendant made *affidavit* before alderman Badger that he was at the time of the issuing these writs of attachment, and had been ever since, a resident of this city; that with his family he had occupied a house in this city for some time prior to that time, and had lived there since without interruption; that he had consulted Mr Dallas in his office the same day; that the goods attached were not his property, but, as he believes, are the property of M. Carriere.

A rule to show cause why the *foreign attachment* should not be quashed was entered.

A *capias ad respondendum* was issued by the plaintiffs against the defendant, and bail was demanded in 87,000 dollars for the same debt, the property being then in custody of the sheriff under the *foreign attachments*, and the said rule being at the time pending.

While all the above writs were in the hands of the sheriff as aforesaid, an *affidavit* was prepared and duly sworn to in behalf of the same plaintiffs, against the defendant, for the purpose of grounding a *domestic attachment* for the same debt, reducing its amount however to from 132,263 fr. 65 c. to 26,752 dollars 33 cents, and stating that the defendant " has absconded from the place of his usual abode in this state, with design to defraud his creditors," and has not left a clear real estate, &c., sufficient to pay his debts.

The rule to show cause was made absolute, and the *foreign attachment* dissolved by the court. A writ of *domestic attachment*, based upon the above *affidavit*, issued while the *capias ad respondendum* was in full force, the 1st of December being the return day, and service of the writ during any subsequent part of that day by the sheriff being legal. The defendant, from the time of his arrival in this state to the issuing of the process against him, by assuming a false name and some other circumstances, was in disguise and concealment. After the issuing of the *capias*, he absented himself from his family and the house in which they lived, and took lodgings in another street for the purpose of avoiding the arrest under it.

The plaintiffs proved that the defendant was declared bankrupt in the court of commissioners of bankrupts in London, on the 17th November preceding, on a petition dated the 13th of the same month, and he is therein described as of No. 13 Rue de Clery, in Paris, France.

[Thurneyssen v. Vouthier.]

It was also proved that the defendant was naturalized as a citizen of the United States, at New York, in 1829.

Simultaneously with these several suits and proceedings against the defendant in this court, he appears to have been proceeded against in London as aforesaid, and up to the 9th of December, after the issuing of the writ of *domestic attachment*, he is described as of No. 13 Rue de Clery, Paris, &c.

A *capias ad respondendum* issued at the suit of A. Lenthelhon & Co. against the defendant, demanding bail in 1200 dollars, returned *N. E. I.*, was given in evidence by the plaintiffs, and also the *affidavit* filed of the cause of action, stating the plaintiffs to reside in New York, the claim to lie on a bill of exchange drawn by Guillet de la Bonglin & Co., dated St Quentin, 19th of July 1834, for 3583 fr. 15c., money of France, payable at the end of October 1834, to the order of said Guillet de la Bonglin & Co., and indorsed to the plaintiffs and directed to Vouthier Fils, Rue de Clery, No. 13, Paris, and accepted by his attorney in fact; "that plaintiff is informed, and believes, said Vouthier is now in Philadelphia, and that since the acceptance he has absconded from his domicil in France, and has arrived in Philadelphia, where he keeps concealed with design to defraud his creditors, &c."

The defendant applied for a rule to show cause why the *domestic attachment* should not be quashed, and filed his *affidavit* in support of the rule, stating the facts.

*Tyson* and *J. R. Ingersoll*, for plaintiff.
*Randall* and *Dallas*, for defendant.

In support of the rule, the counsel for the defendant presented several points, but that which the court considered in their opinion was as follows:

"That Vouthier had not a usual place of abode in this state; had engaged in no trade, and contracted no debts therein, and had no resident creditors here, whom by absconding he could defraud, and consequently was not subject to this process."

The opinion of the Court (BARNES, *President*; COXE, J.; and PETTIT, J.) was delivered by

COXE, J.—The defendant, residing and trading in Paris, appears to have sailed for the United States in the last autumn, probably by

[Thurneyssen v. Vouthier.]

way of England, with his wife and her parents. Having arrived at New York, he shortly after came with these persons to Philadelphia, where he was an entire stranger, and evidently in disguise, and under an assumed name ; he never expressed any intention permanently to reside here, and was probably a fugitive from his foreign creditors. He applied for the house of Mrs Dougherty, not for a year, or quarter, or half year, but in the month of November he applied to rent it until May, which would be less than six months, describing himself as a stranger unable to give security, offering to pay in advance, and expressing no intention to remain beyond May. There was therefore in the manner of taking the house a strong intimation that it was intended as a merely temporary residence, and that he had no intention of fixing his residence in Philadelphia ; and at the time of withdrawing from his family to avoid the *capias* and the issuing of the *domestic attachment*, he had no creditor whose debt was contracted here but the owner of the house, who was amply secured by the property on the premises, and who has since been paid. There is no domestic creditor who applies for relief or protection under the attachment laws, and no such creditor is known to the court to exist.

It will be necessary for the court to review the state of the law as to *domestic attachments* prior to the act of the 4th of December 1807, *Purd. Dig.* 70, as it has been argued that the decisions of our courts prior to that act, were made under enactments essentially differing from it in the description of the persons liable to the writ, and consequently are not authority upon the question now under consideration.

As early as 1705, the legislature of Pennsylvania, in the preamble of an act entitled " an act about *attachments*," declared the mischiefs or inconvenience that the act was intended to remedy, in these words :

" Whereas the laws of this government have hitherto been deficient in respect to attachments, so that the effects of persons absenting are not equally liable with those persons upon the spot, to make restitution for debts *contracted in or owing in this province*, to the great injury of the *inhabitants* thereof, and encouragement of such unworthy persons as frequently by *absconding* make an advantage of the defect aforesaid."

The debtor is here described as " absconding" and " absenting,"

I.—3 D

[Thurneyssen v. Vouthier.]

in contradistinction to those persons dwelling " upon the spot ;" the debts as " contracted or owing within this province ;" the persons to be protected by the act as "inhabitants thereof."

Although foreign creditors are allowed, upon principles of liberal justice, to secure their debts in cases in which a defendant has been brought within the principles of the *domestic attachment laws*, it will be found that in order to ground such a proceeding under all the acts of assembly which have since been in operation, this description in 1705 of the debtor, of his debts, and of his creditors, as the principal objects of legislative protection, has never been substantially changed, and has been recognised and sustained by judicial decisions without exception.

The act of the 2d of March 1723, *Purd. Dig.* 69, provides that no writ of attachment shall be issued but on oath or affirmation that the defendant in such attachment is indebted to the plaintiff therein named, in the sum of 40 dollars or more ; and that the defendant is and has been absconded from the place of his usual abode for the space of six days, with design to defraud his creditors, as is believed ; and that the defendant has not left a clear real estate, in fee simple within this province, sufficient to pay his debts, &c.

On the 22d of January 1774, was passed " an act to oblige trustees and assignees of insolvent debtors to execute their trusts," (*Carey & Bioren* 116, *vol.* 2), *sect.* 4, which has not been cited on the argument.   It provides :

" And whereas the laws of this province respecting *domestic attachments* are defective, inasmuch as they do not empower the justices to issue writs of attachments against persons who shall confine or conceal themselves within their own houses, or elsewhere, with intent to defraud their creditors.

" Be it therefore enacted, that if it shall appear on oath, &c. that his or their debtor or debtors have concealed him or themselves elsewhere, for and during the space of six days, with design to defraud his, her or their creditors, as is believed, and that he, she, or they have not a clear real estate," &c. as in former act.

The only difference between the act of 1807 and this, as to the debt, is the omission of the necessity of its amounting to 40 dollars.   As to the debtor, it adds to the acts to defraud his creditors, which will render him liable to the writ, that he has " remained absent from the state ;" and the words " for and during the space of six days" are omitted.   It

[Thurneyssen v. Vouthier.]

is therefore clear that no alteration was made in the laws existing prior to 1807, by this act, relating to the character of the defendant, the debt, or the creditors, so far as they are involved in the case under consideration; and that all judicial determinations under the acts of 1723 and 1774 apply with full force to the act of 1807 upon the questions under consideration.

We shall therefore proceed to consider the cases which we regard as judicial authorities operative upon the case, and obligatory upon the court. The disjunctive conjunction used in stating the various acts of concealment, absconding, &c. in the act of 1807, on which great stress has been laid, has been introduced in fact from the act of 1774; and the construction based upon its use in the former would equally apply to the latter act.

In Lazarus Barnet's Case, Judge Shippen has ably reviewed these three acts of assembly of 1705, 1723 and 1774, the latter being cited as 14 *George* 3, c. 5.

He considers three sort of debtors to be included in the act of 1705. 1st, those who never resided here; 2d, those who had, but had absconded or otherwise removed, both being non residents within the 3d section; and, 3d, those who were about to remove without security to their creditors. In the act of 1723 it is stated, "that divers irregularities and fraudulent practices had happened, to the injury of such creditors as were willing to accept an equal share of the effects of their debtors." He then inquires to which of these three descriptions of debtors the preamble applies.

*It could not be the first;* they resided abroad, and their effects coming here only occasionally, there was no great danger of fraudulent practices. And the act of 1723, by continuing the former remedy against them, is regarded by Judge Shippen as making this manifest. The act of 1723 makes a new provision with respect to both the other classes, which are consolidated in one—"persons who have absconded from their usual place of abode for six days, with design to defraud their creditors, without regard to their being in or out of the province." If they had absconded with design to defraud their creditors, the act of 1774 merely multiplies the acts with design to defraud, which latter acts of bankruptcy bring the defendant within the statute. The preamble of the act of 1774 may be said also to apply most evidently to domestic creditors.

The word "inhabitant" has a plain meaning. A person coming

[Thurneyssen v. Vouthier.]

hither occasionally as a captain of a ship, in the course of trade, cannot be called an inhabitant; nor does a person going from his settled habitation here, on occasional business to Boston, or any other place cease to be an inhabitant. But a man who comes from another place to reside among us, introduces his family, takes a house, engages in trade, contracts debts, and after some time runs away with design to defraud his creditors—he ought surely to be considered as such an inhabitant, as not to be an object of the *foreign attachment*, but of the *domestic* one.

Such has been the uniform construction of the law from 1724 until the act of 1774, which last gives a legislative sanction to the practice.

After reviewing the numerous cases cited on both sides of the argument, we have found ourselves brought back to this most clear and satisfactory authority, which, although the leading case on *domestic attachments*, has never been overruled or been shaken by judicial decision. In some instances, efforts have been made to modify it, particularly to fix a definite time during which a defendant must have resided, engaged in trade and contracted debts, but no time has yet been judicially settled. Probably no particular or specific time may be necessary; but the defendant must in fact reside here, and contract debts here, and subsequently abscond from the place of his usual abode in this state, &c., with design to defraud his creditors.

Judge Shippen has said, in reference to the preamble of the act of 1723, it could not mean the first class of debtors, as there was no danger of fraudulent practices in relation to them, they residing abroad—so there could be no such danger requiring legislative interposition in relation to foreign creditors whose debts were not contracted here.

The defendant cannot be regarded as within this description. He was a stranger in disguise, flying from his domicil in Paris, to avoid foreign creditors, temporarily concealing himself in Philadelphia, in a house taken for that purpose, and not with a view to a permanent residence; no debts contracted here that he could by absconding defeat; no domestic creditor existing; none whom he could have designed to defraud by absconding or concealing himself.

The practice of the courts of this state in relation to domestic attachments, has been too long settled to be now disturbed without

[Thurneyssen v. Vouthier.]

legislative enactment. The *affidavit* to ground the suit in the case before us, which is well drawn, shows the views entertained by the counsel in relation to that practice.

The court being of opinion that the defendant is not the subject of a domestic attachment, order the rule to be made absolute.

Attachment dissolved.(*a*)

(*a*) See the act of the 13th of June 1836, sect. 1, *Pamph. Laws* 608.